IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No. 5:23-cv-180-D-RN

| | | |
|---|---|---|
| ESTATE OF JADA JOHNSON, L.J., the minor daughter of Jada Johnson, RICHARD IWANSKI, individually, as executor of the Estate of Jada Johnson and guardian of L.J., and MARIA IWANSKI, individually, as executor of the Estate of Jada Johnson and guardian of L.J., | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | **DEFENDANT BOROM'S REPLY BRIEF IN** |
| v. | ) ) ) | **SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT** |
| SERGEANT TIMOTHY RUGG, individually, OFFICER ZACHARIUS BOROM, individually, JOHN AND JANE DOE'S 1-100, City of Fayetteville employees and police officers, | ) ) ) ) ) | |
| Defendants. | ) ) | |

Defendant Officer Zacharius Borom, in his individual capacity, respectfully submits the following Reply Brief in support of his Motion for Summary Judgment as required by Local Rule 56.1 and 7.1(f).[1] For the reasons stated below, as well as the reasons stated in Defendant's principal brief, [DE 91], Defendant Borom respectfully requests that his Motion for Summary Judgment be GRANTED.

**ARGUMENT**

I.  **PLAINTIFFS' § 1983 CLAIM FOR EXCESSIVE FORCE SHOULD BE DISMISSED AS THE FORCE USED BY OFFICER BOROM WAS REASONABLE AND JUSTIFIED UNDER THE TOTALITY OF THE CIRCUMSTANCES.**

   **A.  The Initial Shots by Officer Borom Were Reasonable under the Circumstances.**

---

[1] Plaintiffs' response brief incorporates by reference arguments contained in their Reply to Plaintiffs' Motion for Partial Summary Judgment (DE 108). However, Plaintiffs' Reply brief is 19 pages long in violation of LR 7.2(f) (reply briefs are limited to 10 pages) – almost twice the allowed limit. It also does not contain a certification that it does not exceed the 2,800-word limit for a reply. Plaintiffs did not file a motion for a page extension. As a result, Plaintiffs' Reply brief (DE 108) should be stricken.

Plaintiffs struggle to fashion a plausible argument why the first volley of shots by Officer Borom was not objectively reasonable as a matter of law. In their struggle, Plaintiffs attempt to focus the court's attention solely on the period during that evening before Johnson and Sergeant Rugg engaged in a scuffle over Johnson's firearm. Plaintiffs inaccurately describe Johnson as "calm" and "slow" during the incident and mention that prior to the scuffle, Johnson had possession of the gun but had only pointed the gun at herself and not threatened anyone else. Based on these limited facts, Plaintiffs contend there is a jury question as to whether the first volley of shots fired by Officer Borom were objectively reasonable. Plaintiffs' position, however, is baseless.

Plaintiffs correctly state that this Court must consider the totality of the circumstances, and not just the very moment shots were fired, to determine if Officer Borom's first volley of shots was reasonable. *Barnes v. Felix*, 145 S.Ct. 1353, 1359 (2025) ("The history of the interaction, as well as other past circumstances known to the officer, thus may inform the reasonableness of the Officer's conduct.") Plaintiffs, however, cannot "pick and choose" the facts they want the court to consider in the analysis, and conveniently brush over important events that reveal Johnson created a real threat of harm to the officers that evening --- including the undisputed fact that prior to the scuffle Johnson pointed her gun directly at Sergeant Rugg. (Ex A, Borom 2, 27:10; Rugg 2, 43:39) ("Jada, you got that pointed at my Sergeant"). Plaintiffs wholly ignore the fact that Johnson was not merely holding a gun in her grandfather's house, she was wielding the gun in close proximity to the officers and her family members, including her infant daughter who she insisted be by her side during the entire event. *See McLaughlin v. United States*, 476 U.S. 16, 17 (1986) ("[T]he law reasonably may presume that [a gun] is always dangerous even though it may not be armed at a particular time or place.") Plaintiffs also disregard the important detail that the officers made multiple requests for Johnson to put the gun down, but she refused each request. They further overlook that Johnson locked the doors to the house and refused to let the crisis-trained EMS crew enter the residence or allow any of the officers to leave. Johnson was essentially holding everyone hostage with possession of a weapon. If Johnson had simply allowed the EMS crew to transport her to the hospital as arranged by the officers, none of the tragic events at issue would have occurred.

Finally, Plaintiffs attempt to downplay and misconstrue the eventual fray over the gun as justification for the first volley of shots. They claim that Seargeant Rugg "tackled" Johnson. They fail to mention that at no time did Johnson voluntarily release the gun to Sergeant Rugg. Instead, Johnson remained armed with the gun, had the opportunity to harm Sergeant Rugg, and was actively struggling over the gun. (Ex A, Rugg 2, 44:10) Even Plaintiffs admit, however, that when the struggle for the weapon occurred, Johnson created an imminent threat to Sergeant Rugg justifying Officer Borom's first volley of shots. As finally recognized by Plaintiffs, their own use of force expert concludes that an imminent threat existed at that time justifying the first volley of shots by Officer Borom. (DE 89-11, Ex. N, p. 33)[2] Notably, Officer Borom showed proper restraint as he did not fire any shots or even unholster his firearm that entire evening until an imminent threat was created by Johnson during the struggle over the weapon. Our case law focuses not on the fact that an individual is armed in her own home, but on her movements while holding the firearm. *See Hensley ex rel. North Carolina v. Price,* 876 F.3d 573, 585-86 (4th Cir. 2017) (collecting cases).

Here, considering the totality of the circumstances that evening, Officer Borom was faced with a tense, uncertain and rapidly evolving situation where Johnson and Sergeant Rugg were ultimately found struggling over a gun. At that point, Officer Borom was justified in firing his weapon. It is well-established in the Fourth Circuit that the law does not require officers in a tense and dangerous situation to wait until the moment a suspect uses a deadly weapon to act to stop the suspect from shooting a fellow officer. *See White v. Leonhardt,* 1995 U.S. App. LEXIS 1441, 1995 WL 26696 (4th Cir. 1995).

**B. The Second Volley of Shots by Officer Borom Were Reasonable under the Circumstances.**

As anticipated, Plaintiffs contend that Johnson was no longer a threat after the first volley of shots. Plaintiffs double-down on their argument that at that moment Johnson was both secured and incapacitated. Contrary to Plaintiffs' contention, the threat to Sergeant Rugg had unfortunately not been eliminated. After the first volley of shots, Johnson was lying on the floor with a gun within inches of her body. She was not

---

[2] Plaintiffs' argument that their police use of force expert's opinions are not admissible is simply incorrect. *See Kopf v. Skyrm,* 993 F.2d 374, 378 (4th Cir. 1993); *United States v. Mohr,* 318 F.3d 613, 624 (4th Cir. 2003).

secured and her right hand was free and positioned to grab the gun. Sergeant Rugg was on his knees and away from Johnson at her feet. Officer Borom was on his radio calling for EMS assistance. The objective video evidence shows that after the first volley of shots, Johnson was not secured in any way by Sergeant Rugg while she lay on the floor directly next to her gun. *See Scott v. Harris*, 550 U.S. 372, 385 (2007).

Significantly, Johnson was obviously not incapacitated, and she retained the ability to inflict harm. Johnson's eyes were open and within less than six seconds after falling to the floor she made an affirmative movement with her arm and placed her right hand on the grip of the gun. Contrary to Plaintiff's description, Johnson's arm did not simply "jerk" towards her firearm. The clear video evidence shows the affirmative movement of Johnson's hand grabbing the grip of the gun. (Ex A, Borom 2, 27:36-27:48; Rugg 2, 44:10-44:15). Officer Borom saw Johnson grab the gun. (Ex. H, Borom Dep., p. 148). At his deposition, Officer Borom described what he witnessed before he fired the second volley of shots:

A: I observed Ms. Johnson place her right hand on the firearm.
Q: Where was the firearm when that happened?
A: In close proximity of her.
……
Q: Did Sergeant Rugg have access to the gun at this point?
A: No, sir.

Officer Borom's second volley of shots were fired only <u>after</u> Johnson physically placed her hand on the gun. Based on Officer Borom's reasonable perception, Plaintiff was still moving, armed, and an imminent threat:

Q. So what happened then? You – you stated you saw something with Ms. Johnson.
A. Yes, sir. She placed her right hand on the firearm again.
Q. And what happened after that?
A. Sergeant Rugg attempted to disarm her again.
Q. And then what happened?
A. I fired my firearm -- discharged my firearm.
Q. Why did you fire for the second time?
A. She was still a threat at that point.
Q. You mentioned you had -- the first time you fired, did you hit her?
A. Yes, sir.
Q. How was she a threat after she's been hit?
A. So once she was struck the initial times, she stopped moving, and which -- due to training and experience, one would think a person who was struck by fire -- not fire -- by live rounds would no longer be a threat. However, once myself and Sergeant Rugg observed her place her hand back on the firearm,
obviously she became a threat again.

Under the totality of the circumstances, it is clear that Officer Borom's second volley of shots was objectively reasonable. *Barnes v. Felix*, 145 S. Ct. 1353, 1359 (2025) (this analysis precludes "put[ting] on chronological blinders"). Officer Borom had just moments earlier witnessed Johnson: (1) announce she wanted to have a "shootout"; (2) lock the officers in the house; (3) pull a weapon from her waistband; (4) threaten to kill herself; (4) point her gun directly at Sergeant Rugg; and (5) fight Rugg over the weapon as they fell to the floor. Then, after the first volley of shots, Officer Borom saw Johnson affirmatively place her right hand back on the grip of her weapon. Based on the totality of these circumstances, it was reasonable for Officer Borom to believe Johnson posed an imminent threat of harm. Officer Borom described the threat as "obvious." All three use of force experts -- including Plaintiff's expert -- agree. (Ex. M, N, and Q). An imminent threat clearly existed when Johnson affirmatively placed her right hand on the grip of the gun, and Officer Borom's second volley of shots was justified. *See, e.g., Craven v. Novelli*, 2024 U.S. App. LEXIS 10834, 2024 WL 1952590 (4th Cir. May 3, 2024). And, of course, both volleys occurred within a span of only 10 seconds (the second volley lasted 3 seconds) as shown by the following body worn video timeline:

| Borom BWC | Rugg BWC | Analysis |
|---|---|---|
| 27:36-27:38 | 44:04-44:06 | Johnson and Officer Rugg struggle over Johnson's gun. Officer Borom fired the first volley of shots. 7 shots are fired in a time span of only 2 seconds. |
| 27:38-27:42 | 44:07-44:11 | No shots were fired by Borom. Borom radios for 911; Rugg rolls away from Johnson and is on his knees several feet from Johnson's gun. |
| 27:42 | 44:11 | Jonhson's eyes are open as she affirmatively moves her hand and places it on the gun grip. No shots fired. |
| 27:43 | 44:12 | Sergeant Rugg grabs Johnson's arm with his left hand; Sergeant Rugg's right hand moves toward the gun. |
| 27:44 | 44:12 | Johnson's right hand remains on the gun; First three shots of second volley fired by Borom. |
| 27:45 -46 | 44:13-14 | Borom continues firing as Rugg begins pulling gun away. |

In short, Officer Borom was forced to make the very type of split-second decision the law is designed to protect. *See Graham v. Connor*, 490 U.S. 386, 397 (1989).

Plaintiffs argue that Officer Borom fired the second volley of shots because Johnson simply had her hand on the gun. While the mere possession of a weapon does not automatically justify deadly force, the Fourth Circuit and other courts have uniformly held that such force is justified when an officer, like Officer Borom here, reasonably perceives an imminent threat based on a person's actions, such as reaching for or manipulating a weapon in a threatening manner. *See, e.g., Ayala v. Wolfe*, 546 F. App'x 197, 200-01 (4th Cir. 2013) (holding officer's shots objectively reasonable when plaintiff moved his right hand to his waistband and removed a gun even though it was not pointed directly at the officer); *Anderson v. Russell,* 247 F.3d 125 (4th Cir. 2001) (the Court held that an officer was entitled to use deadly force where he had a reasonable, but mistaken, belief that the suspect reached for a gun); *Slattery v. Rizzo*, 939 F.2d 213 (4th Cir. 1991) (officer acted reasonably when he shot a suspect who refused to obey instructions to keep his hands up and made motions suggesting he was preparing to fire a weapon, even though suspect was holding a beer bottle); *Craven v. Novelli*, 2024 U.S. App. LEXIS 10834, 2024 WL 1952590 (4th Cir. May 3, 2024) (not excessive force when officers fired 15 shots after plaintiff moved his hands down toward the holster in his waistband; even though, viewed in a light most favorable to plaintiff, he was suffering from a mental health crisis, that fact does not rule out the threat to the officers.); *Aden v. City of Bloomington,* 128 F.4th 952 (8th Cir. 2025) (Eighth Circuit emphasized that deadly force is justified when a suspect's actions, such as reaching for a loaded gun, create a substantial risk of serious harm). As in *Ayala, Anderson*, *Slattery* and *Craven*, Officer Borom's perception of the imminent threat occurred when Johnson affirmatively reached for her gun after having just engaged in an active struggle over control of the weapon with Sergeant Rugg.

The Fourth Circuit has also established that an officer does not need to wait until a gun is pointed at him before he is entitled to use deadly force when other factors (like furtive movement) indicate an imminent threat to life. *Anderson*, 247 F.3d at 131 (collecting cases). That is because such defiance "signal[s] to the officer that the suspect intends to use [the weapon] in a way that imminently threatens the safety of the officer or another person." *Knibbs v. Momphard*, 30 F.4th 200, 225 (4th Cir. 2022). Under

the totality of the circumstances, a reasonable officer would have recognized there was an imminent threat to Sergeant Rugg's life when Johnson, who had just been engaged in a physical struggle with Sergeant Rugg over her weapon, affirmatively reached with her right hand and placed it on the grip of the gun. *See Sigman v. Town of Chapel Hill*, 161 F.3d 782, 787-88 (4th Cir. 1998) (holding that officers acted reasonably in fearing for their lives before shooting an individual who the officers knew had made threats to his own life and to the officers' lives after the individual exited his home while appearing to hold a knife, walked towards the officers, and disobeyed an officer's commands to stop); *Cf. Knibbs v. Momphard*, 30 F.4th 200 (4th Cir. 2022) (holding that suspect merely pointing a gun in the air inside his home without a command by the officer to drop the weapon or some other furtive movement does not create an imminent threat to the officer).

Plaintiff further argues that Sergeant Rugg's "complete and immediate access" to Johnson's gun somehow inoculates against any immediate threat posed by Johnson. [DE 108, p. 7] However, Sergeant Rugg's proximity to the gun and Johnson only increased the danger posed to Sergeant Rugg. After struggling with Johnson for control of the gun, the gun fell on the floor closer to Johnson than Sergeant Rugg and well within her reach. This is demonstrated by the fact that she grabbed the gun before he could and he had to crawl back in and wrench the gun from her grip before she fired the weapon.

Plaintiff correctly states Fourth Circuit law that "force justified at the beginning of an encounter is not justified even seconds later if the justification for the initial force has been eliminated." *Meyers v. Baltimore Cnty., Md.*, 713 F.3d 723, 733 (4th Cir. 2013) (citing *Waterman v. Batton*, 393 F.3d 471, 481 (4th Cir. 2005). Plaintiffs' application of this legal principle to the undisputed facts of this case, however, is misplaced and easily distinguished. The Fourth Circuit held in *Meyers* that "[i]t is an excessive and unreasonable use of force for a police officer repeatedly to administer electrical shocks with a taser on an individual who no longer is armed, has been brought to the ground, has been restrained physically by several other officers, and no longer is actively resisting arrest." *Id.* at 734. There, the officer was not protected by qualified immunity because he "us[ed] unnecessary, gratuitous, and disproportionate force to seize a

secured, unarmed citizen. . . ." *Id.* at 735 (citations omitted). The facts here stand in stark contrast to those in *Meyers*. The bodycam video clearly shows that before Officer Borom fired the second volley of shots, Johnson was unsecured, nobody was touching her, and her hand affirmatively moved to a gripping position on the gun. Likewise, Plaintiff's reliance on *Brockington v. Boykins*, 637 F.3d 503 (4th Cir. 2011) is also misplaced. In *Brockington,* a police officer who was justified in firing initial shots at a suspect, then stood over the suspect "execution style" as he "lay helpless on the ground," fired shots emptying his magazine at the suspect after the suspect fell to the ground unarmed with his hands up. *Id.* at 508. The facts in *Brockington* clearly do not align with the facts here. Finally, in *Harris v. Pittman*, 927 F.3d 266 (4th Cir. 2019), an officer and a suspect wrestled over a gun, the officer fired a single shot that struck the suspect in the chest. Both parties agreed that the first shot was reasonable. The Fourth Circuit's holding was limited in that, for the purposes of summary judgment, there was a material dispute as to the facts after the first shot was fired. *Id.* at 275. Importantly, there was no video recording of the encounter. *Id.* at 276. There, drawing every inference in favor of the plaintiff, when the second shot was fired by the officer, the suspect was lying on the ground, unarmed, showing no signs of any further resistance. *Id* at 280.

In each of these cases, the plaintiff did not have a weapon, or even access to a weapon, at the time of the second volley of shots by the officer. Here, the record clearly and unequivocally establishes that Johnson was both armed and unsecured at the time of the second volley of shots. No reasonable officer could conclude that the threat posed by Johnson had been eliminated. Simply put, the threat of serious physical harm that stemmed from Johnson's conduct was not a mere passing threat that had been eliminated. *See Skeen v. Washington Cnty. Sheriff's Office,* 2022 U.S. Dist. LEXIS 80112 (W.D. Va., April 22, 2022).

**II.     QUALIFIED IMMUNITY IS APPROPRIATE HERE AS THERE IS NO FOURTH AMENDMENT VIOLATION AND THE CLEARLY ESTABLISHED LAW SUPPORTS OFFICER BOROM'S ACTIONS.**

The qualified immunity doctrine remains a bar to Plaintiff's § 1983 claims as Officer Borom reasonably perceived an imminent threat to Sergeant Rugg when both volleys of shots were fired. *See, e.g., Anderson v. Russell*, 247 F.3d 125 (4th Cir. 2001); *Ayala v. Wolfe*, 546 F. App'x 197, 200-01 (4th Cir. 2013);

*Elliott v. Leavitt,* 99 F.3d 640 (4th Cir. 1996); *Slattery v. Rizzo*, 939 F.2d 213 (4th Cir. 1991); *Craven v. Novelli*, 2024 U.S. App. LEXIS 10834, 2024 WL 1952590 (4th Cir. May 3, 2024).

It was also clearly established in July 2022 that an officer may use deadly force against a person who possesses a firearm when, like Johnson did here, that person makes an affirmative movement that would create an imminent threat. *See, e.g. Anderson v. Russell*, 247 F.3d 125 (4th Cir. 2001); *Slattery v. Rizzo*, 939 F.2d 213 (4th Cir. 1991); *Knibbs v. Momphard*, 30 F.4th 200 (4th Cir. 2022) (holding that suspect making a threatening movement with a weapon can create an imminent threat which would justify use of deadly force). Plaintiffs rely on *Franklin v. City of Charlotte*, 64 F.4th 519 (4th Cir. 2023), which was decided <u>after</u> this incident occurred. Even so, *Franklin* is easily distinguished as it involved an officer who fired shots at the plaintiff even though the officer could not see plaintiff's hands when he commanded plaintiff to hand over his gun, and the video evidence showed plaintiff complied with the command by removing a gun from his jacket by the top of the gun barrel and not by the grip.

Plaintiffs cite no binding case law which indicates that a reasonable officer, like Officer Borom, would not have perceived an imminent threat based on Johnson's actions. As explained above, Plaintiffs' reliance on *Meyers, Brockington* and *Harris* for clearly established law in this case is unfounded. Again, Plaintiff ignores the undisputed fact that Johnson, unlike the plaintiffs in each of those cases, had a gun in her hand when the second volley of shots was fired. Accordingly, Officer Borom is entitled to qualified immunity.

## III. THE ESTATE'S STATE LAW NEGLIGENCE AND WRONGFUL DEATH CLAIMS ARE BARRED BY JOHNSON'S CONTRIBUTORY NEGLIGENCE.

As stated in Officer Borom's principal brief, [DE 91], Plaintiff's tort claims for wrongful death negligence, survivorship, assault and battery against Officer Borom should be dismissed on the same grounds as the § 1983 claims. *See Sigman v. Town of Chapel Hill*, 161 F.3d 782, 789 (4th Cir. 1998); *Wilcoxson v. Painter*, 2016 WL 866327, *10 (E.D.N.C. March 3, 2016). This is a tragic case, painful to the decedent's survivors, and as well as to Officer Borom who bears the burden of taking a life. Nevertheless, Officer Borom acted reasonably and with justification and cannot be held legally responsible for Johnson's

death.

Additionally, the Estate's negligence claims are also barred by Johnson's own contributory negligence. Here, the undisputed facts show that Johnson and the Iwanskis engaged in conduct that proximately caused Johnson's own tragic death that evening:

- Johnson was discharged from Cape Fear Valley Hospital on the morning of July 1, 2022 from a condition that was "substance induced." She was given discharge instructions warning her to refrain from consuming alcohol or drugs. Those instructions contained contact information for professionals at the hospital in the event of regression. They also stated for Johnson to return to the emergency room in a medical emergency. Those instructions were in the home at all times relevant to the claims made against Officer Borom and Sergeant Rugg. Both Johnson and Ms. Iwanski were aware of those instructions. They were ignored.

- At the time of the incident, Johnson was not suffering from a mental health episode. Instead, Johnson had voluntarily consumed alcohol and drugs after her discharge from the hospital that morning and before the officers arrived that evening. Rick Iwanski stated that Johnson's sister visited Johnson at the house that day – the same sister that he knew historically supplied Johnson with alcohol and drugs. He did nothing to prevent this from occurring.

- Johnson began exhibiting erratic behavior the afternoon of July 1. Mr. and Mrs. Iwanski witnessed this behavior but did not contact the hospital or any other medical professional and did not take Johnson to the hospital for further evaluation and treatment. They ignored it.

- After arriving, the officers convinced Johnson to be admitted to the hospital, and she agreed. Officer Borom called an ambulance. When the ambulance arrived, Johnson locked the doors and refused to allow the EMS crew to enter the house. In doing so, Johnson chose to turn away the very assistance that Plaintiffs now claim the officers failed to provide.

- An intoxicated and high Johnson pulled a gun from her waistband and wielded it in front of the officers and her family members.

- Johnson ignored multiple requests by the officers to put the gun down.

- Johnson pointed the gun directly at Sergeant Rugg.

- After falling on the floor, Johnson affirmatively placed her right hand on the grip of the gun in an active attempt to fire her weapon at Sergeant Rugg.

## **CONCLUSION**

For the foregoing reasons, Defendant Borom respectfully requests that his Motion for Summary Judgment be GRANTED, and Plaintiff's claims be dismissed with prejudice.

This the 29th day of August 2025.

BY:      /s/ James C. Thornton
         James C. Thornton
         Cranfill Sumner LLP
         Post Office Box 27808
         Raleigh, North Carolina 27611
         Telephone (919) 828-5100
         E-mail:  jthornton@cshlaw.com
         *Attorney for Defendant Borom*

         /s/ J. Heydt Philbeck
         J. Heydt Philbeck
         Bailey & Dixon LLP
         P.O. Box 1351
         Raliegh, NC  27602
         Telephone: 919-828-0731
         Email: hphilbeck@bdixon.com
         *Attorney for Defendant Borom*

**CERTIFICATE OF SERVICE**

This is to certify that the undersigned has this day filed and served the attached *Defendant Borom's Reply Brief in Support of Motion for Summary Judgment* on counsel of record via the CM/ECF system to as set out below:

Xavier Torres de Janon
E-mail:  xdj@johnnichlaw.com
Johnson & Nicholson
5806 Monroe Road, Suite 102
Charlotte, NC  28212
*Attorneys for Plaintiff*

Carnell Johnson
E-mail:  cj@johnnichlaw.com
Johnson & Nicholson, PLLC
5701 Executive Center Drive, Suite 415
Charlotte, NC  28212
*Attorneys for Plaintiff*

J. Heydt Philbeck
434 Fayetteville Street, Suite 2500
Raleigh, NC  27601
E-mail:  hphilbeck@bdixon.com
*Attorneys for Defendant Zacharius Borom*

Clay Collier
Crossley McIntosh Collier Hanley & Edes, PLLC
5002 Randall Parkway
Wilmington, NC  28403
Email:  clayc@cmclawfirm.com
*Attorneys for Defendant Timothy Rugg*

John E. Ryan, III
Ryan Legal Services
508 West Main Street
Mount Olive, NC 28365
E-mail:  john@ryanlegalservice.com
*Attorney for Defendant Timothy Rugg*

This the 29th day of August 2025.

CRANFILL SUMNER LLP

BY:      /s/ James C. Thornton
         JAMES C. THORNTON
         N.C. State Bar No. 16859
         E-mail:  jthornton@cshlaw.com
         Post Office Box 27808
         Raleigh, North Carolina 27611
         Telephone (919) 828-5100
         *Attorneys for Defendant Borom*